UNITED STATES of America, et al., Plaintiffs,

v.

STATE OF MICHIGAN, et al., Defendants.

No. M26–73 C.A.

United States District Court, W. D. Michigan, N. D.

Aug. 18, 1981.

See also, 6th Cir., 653 F.2d 277.

Robert C. Greene, U. S. Atty., U. S. Dept. of Justice, W. D. Mich., Grand Rapids, Mich., Elmer T. Nitzschke, Field Sol., U. S.

Dept. of the Interior, St. Paul, Minn., for the U. S.

Stewart H. Freeman, Asst. Atty. Gen., Lansing, Mich., for State of Mich.

Stephen O. Schultz, Foster, Swift, Collins & Coey, Lansing, Mich., for Grand Traverse Area Sport Fishing Ass'n.

Richard B. Baxter, Baxter & Hammond, Grand Rapids, Mich., for Honorable Charles M. Forster, Judge of the Thirteenth Judicial Circuit of the State of Mich.

Bruce R. Greene, Native American Rights Fund, Boulder, Colo., William J. James, Upper Peninsula Legal Services, Sault Ste. Marie, Mich., for Bay Mills Indian Community.

Daniel T. Green, Sault Ste. Marie, Mich., for Sault Ste. Marie Tribe of Chippewa Indians.

William Rastetter, Michigan Indian Legal Services, Traverse City, Mich., for Grand Traverse Band of Ottawa and Chippewa Indians.

## OPINION

FOX, Senior District Judge.

On May 28, 1980, the United States Court of Appeals for the Sixth Circuit, 623 F.2d 448, issued an Order which remanded this case to the district court to consider the meaning and effect of new federal regulations on this Indian treaty fishing dispute. Since this court's opinion of May 7, 1979, 471 F.Supp. 192, the Secretary of the Interior had issued comprehensive regulations governing Indian fishing in the Great Lakes, including gill net fishing.[1] The Indian tribes and the government argued before the Circuit Court that, even assuming that state law would otherwise govern Indian fishing rights, these new regulations occupied the field with respect to treaty fishing and made general state fishing laws no longer applicable. Since this court had not addressed or decided the effect of these regulations on the power and authority of the state, the matter was remanded to this

court to consider and answer the following questions:

(1) Were the new regulations intended to have, and do they have, the effect of preempting all state regulation of treaty fishing?

(2) If so, do the new regulations prohibit enforcement by state officials?

(3) If so, do the new regulations oust the state court of jurisdiction to control Indian fishing rights or does the state court retain concurrent jurisdiction with the federal court?

The Sixth Circuit Court stated that the answer to these questions may depend in part on the existence of viable tribal councils capable of enforcement, and the taking of proofs may be necessary. *United States v. Michigan*, 623 F.2d 448, 450 (6th Cir. 1980).

Several telephone conferences were held in an attempt to expedite the discovery process. The State originally proposed taking depositions of twenty-one Interior officials. Subsequently, this list was narrowed down, and ultimately no depositions took place.

On July 16, 1980, the Sixth Circuit Court issued an Order which clarified Grand Traverse Area Sport Fishing Association's (GTASFA) status in the remanded proceedings. In addition, that Order modified a previously entered stay, and allowed treaty fishing under the Secretary of Interior's regulations. The State then filed a petition under the All Writs Act, 28 U.S.C. § 1651, with the U.S. Supreme Court, requesting the July 16th Order be lifted and the May 30th stay Order reimposed. Associate Justice Byron R. White refused this extraordinary request, and left undisturbed the three-judge panel's Order of July 16, 1980.

Trial on the remanded proceedings began on September 30, 1980 in Marquette. Nine days of testimony were heard. Various tribal witnesses testified concerning the existence of enforcement mechanisms. Evidence regarding tribal conservation codes,

---

1. The Secretary of Interior's regulations are contained in 25 C.F.R. part 256, 44 Fed.Reg. 65747 (November 15, 1979), as amended, 45 Fed.Reg. 28100 (April 28, 1980).

tribal enforcement efforts, and tribal courts was received. While many spoke about past difficulties in working with the State, the general feeling of the tribal witnesses was that the regulations were working, were effective, and had reduced the tension that had often existed when the State was regulating.

Eric Jankel, Special Assistant to Secretary Andrus, testified about the facts, circumstances, and history surrounding the issuance of treaty fishing regulations. Mr. Jankel was in court and cross-examined on September 30th, October 16th, 17th and 24th. On November 3, 1980, with all counsel present in chambers, this court wanted to clarify a few points Mr. Jankel had made by asking him some questions during a telephone conference. Despite the fact that all counsel had four different occasions to view Mr. Jankel's demeanor, substantial amounts of time and money would be saved, and telephone conferences have been used successfully in other courts, see, Gottschalk, *Courts Calling on Telephones to Economize*, The Wall Street Journal, June 1, 1981, at 29, col. 3, the State threatened to appeal. To avoid further prolonging the proceedings, additional questioning of Mr. Jankel was not undertaken.

In late October, a treaty Indian fisherman was found in contempt of state court for engaging in activity that the Circuit Court had authorized in its July 16, 1980 Order. The State's Thirteenth Judicial Circuit, in *GTASFA v. Maudrie, et al.*, File No. 79–7510 C.E., found Patrick G. Kinney in criminal contempt for fishing under the federal regulations in violation of a four-teen-month old ex-parte restraining order. This district court was petitioned to enjoin the state court charge, and on November 13, 1980, 508 F.Supp. 480 a preliminary injunction was entered.[2]

The regulations contained in 25 C.F.R. part 256, 44 Fed.Reg. 65747 (November 15, 1979), as amended, 45 Fed.Reg. 28100 (April 28, 1980) were interim rules promulgated by the Secretary of Interior and were scheduled to expire on their own terms on January 1, 1981. By that time, it was anticipated that permanent rules would be in place. With the election and upcoming change of Administrations, however, tremendous political pressure was brought to bear on the situation. Rather than adopting permanent rules, the Carter Administration, through Secretary Andrus, extended the regulations to May 11, 1981. 46 Fed.Reg. 33 (January 2, 1981). This extension maintained the status quo pending the beginning of the 1981 fishing season. The Notice in the Federal Register stated that it was anticipated that regulations governing treaty fishing would be published in April.

With the change of Administrations, political pressure was again applied to end the federal regulatory scheme and give the State control over treaty fishing. On April 20, 1981, Michigan Congressman Guy Vander Jagt's office revealed the Secretary's decision to let the regulations lapse. By identical letters sent to the Chairmen of the Tribes and the Governor, Secretary Watt announced his decision not to renew the federal regulations. Despite eight years of the government's urgings to the contrary,[3]

---

**2.** A similar fact pattern was presented to this court in March 1981. At the hearing for a preliminary injunction held on March 19, 1981, counsel for the state court judge and GTASFA threatened to prosecute other treaty fishers for obeying the Sixth Circuit Court Order of July 16th. (Transcript of Proceedings, March 19, 1981, p. 11, 41). As in the Kinney matter, a preliminary injunction was issued.

**3.** This suit was filed in April 1973 by the United States of America, under the authority of the Attorney General, and at the request of the Secretary of the Interior. Due to arrests, prosecutions, threatened prosecutions, and the threat of confiscation of personal property by the State, the right of treaty Indians to fish had been frustrated, and the health and economic well-being of their families had been seriously affected. The United States sought a declaration that treaty Indians possessed an aboriginal right, confirmed by the treaty, to fish, and that the State of Michigan did not have the right to control or regulate fishing of tribal members. (See: Complaint For Declaratory Judgment and Permanent Injunction, filed April 9, 1973, and attached hereto as Appendix A.) This was the policy the United States consistently followed from the Nixon Administration until April 20, 1981.

the Secretary stated that the reasoning of *People v. LeBlanc* accurately states the law applicable to treaty fishing. The Secretary invited the parties to meet in an attempt to work out a "consensus management program," which would recognize the concurrent responsibilities and duties of the State, the Tribes, and the Department of the Interior.

In light of these developments, the State filed an emergency motion with the Sixth Circuit Court to set aside the remand order, and to put in place the State's "emergency regulations" as an interim measure to replace the lapsed federal regulations. Rather than petition the district court, which still had jurisdiction to consider the remand issues, the State requested immediate consideration from the Sixth Circuit. A phone conference was held on April 30, 1981 to apprise the district court of these maneuverings. On June 19, 1981 oral arguments were heard by the Circuit Court in Cincinnati.

On July 10, 1981, the United States Court of Appeals for the Sixth Circuit issued an Order. 653 F.2d 277. First, that Order recognized that Indians possess aboriginal rights to fish. These rights continue to the present day, as preserved in the Treaty of 1836. The Court added that the protection of these rights is the solemn obligation of the federal government, and no principle of federalism required the federal government to defer to the states in connection with the protection of these rights.

■ Second, the July 10th Order stated that in the absence of federal regulations, *People v. LeBlanc*, 399 Mich. 31, 248 N.W.2d 199 (1976), accurately states the rule of reason applicable to this case. The Circuit Court cautioned, however, that "only upon a finding of necessity, irreparable harm and the absence of effective Indian tribal self-regulation should the District Court sanction and permit state regulation of gill net fishing." Order, 653 F.2d 279, July 10, 1981. Unless the state meets these criteria,

they may not regulate at all. If the state meets these criteria, any regulations must (a) be a necessary conservation measure, (b) be the least restrictive alternative method available for preserving fisheries in the Great Lakes from irreparable harm, and (c) must not discriminatorily harm Indian fishing or favor other classes of fishermen. Order, 653 F.2d 279, July 10, 1981. In the interim, the tribes can self-regulate [4] and the District Court is given power to modify the regulations.

■ The third significant announcement in the July 10th Order is that this court's injunction against the state court (*GTASFA v. Maudrie, et al.*, File No. 79–7510, in the Circuit Court for the County of Grand Traverse) continues to be appropriate. The Sixth Circuit Court recognized that while questions concerning Indian treaty rights and the degree of permissible state regulation are pending in federal court, it is improper under the supremacy clause for a state court to make orders inconsistent with those of the federal courts. The doctrine of abstention does not apply where this court's Orders were in aid of jurisdiction, the state case was brought after the federal case was pending, and the orders of the state court had the effect of interfering with and obstructing the orderly adjudication of the federal questions in the District Court. Order, 653 F.2d 279, 280, July 10, 1981.

■ A status conference was held on July 23, 1981 by this court to consider procedures on the Order of Remand. This court, after giving full consideration to all parties, concludes as follows:

(1) That the remand to this court to consider the preemptive effect of the Secretary of Interior's regulations contained in 25 C.F.R. part 256, 44 Fed.Reg. 65747 (November 15, 1979), as amended, 45 Fed.Reg. 28100 (April 28, 1980) is moot. The actions of the Secretary to allow the regulations to lapse removed the constitutional requirement of a "case or controversy" (Article III,

---

**4.** The tribes had previously adopted the Secretary's regulations as part of their tribal conservation codes. Despite the Secretary's decision

to allow the regulations to lapse, they remain tribal law, and are binding on all treaty tribe fishers.

United States Constitution). The fact that the Tribes have adopted the federal regulations as part of their Conservation Codes, and the Circuit Court has sanctioned this form of regulation still renders any consideration by this court of the May 28, 1980 "three questions" an advisory opinion. There is a fundamental distinction between active administrative regulations, and court sanctioned interim rules. Therefore, this court need not, and cannot address the merits of the questions posed to it in the earlier remand.

(2) Counsel for the State of Michigan advised this court that they have no present intention to meet the burdens outlined in the July 10, 1981 Order, necessary to regulate treaty fishing. This court, therefore, retains jurisdiction under the July 10th Order to consider and decide in accordance with the principles outlined in that Order and in *People v. LeBlanc, supra*, the propriety of any future attempts by the State to impose regulations upon treaty fishers.

(3) This court retains jurisdiction to modify the current rules regarding treaty tribe fishing on an interim basis, under Rule 65, Federal Rules of Civil Procedure, as the need may arise.[5]

## APPENDIX A

### COMPLAINT FOR DECLARATORY JUDGMENT AND PERMANENT INJUNCTION

The United States of America, by John Milanowski, United States Attorney for the Western District of Michigan, acting under the authority of the Attorney General and at the request of the Secretary of the Interior, complains and alleges as follows:

### CLAIM FOR RELIEF

1. This Court has jurisdiction by reason of the fact that the United States is plaintiff. 28 U.S.C. § 1345.

2. The United States brings this action in its own behalf and in behalf of the Bay Mills Indian Community which is a tribe or a band of Indians recognized as such by the Secretary of the Interior.

3. The United States has entered into treaties with the tribe or band mentioned in paragraph 2, including the Treaty of March 28, 1836, with the Ottawa and Chippewa Nations of Indians (7 Stat. 491).

4. The Bay Mills Indian Community is organized under the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378). These Indians are still under the protective arm of the United States. Hunting, fishing, trapping, and gathering fruits of the land were essential methods of obtaining food for the very existence of these Indians at the time this treaty was entered into, and plaintiff alleges that the right to hunt, fish, trap, and gather fruits of the land are aboriginal rights which were confirmed by the Treaty of March 28, 1836. Included in these rights was the right to fish in the waters of Lake Superior.

---

**5.** This court has stated that it does not want to assume the role of a "perpetual fishmaster." See: 508 F.Supp. 480, 486 (W.D.Mich.1980). However, the inability of the parties to negotiate, or to litigate in the District Court has meant that this court must continue to assume a role in Great Lakes fishing. The initiation of "hostile flanking actions," state prosecutions of treaty fishers for compliance with federal court orders, various attempts to avoid the court system by seeking political solutions in Washington, and the frequent trips to the Sixth Circuit Court have only served to postpone and delay these already lengthy proceedings. While not wanting to become a "perpetual fishmaster," this court must continue its role in this dispute, if the need arises. District judges cannot escape their constitutional responsibilities by ignoring problems or avoiding issues. (See Justice McLean's concurring opinion in *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 571–2, 8 L.Ed. 483 (1832), where, in describing the duty of the Court, he stated:

"... if this court should shrink from a discharge of their duty, in giving effect to the supreme law of the land, would they not violate their oath, prove traitors to the constitution, and forfeit all just claim to the public confidence?"

The United States Courts exist to ensure guaranteed constitutional rights against the tyranny of popular majorities, 471 F.Supp. 192, 205 (W.D.Mich.1979), and while that is not always an easy task, it is one that must be accepted. Lawyers and public officials have a similar duty to the Constitution.

5. Defendant has been, for a number of years, interfering with the rights of the Bay Mills Indian Community to fish in the waters of Lake Superior by enforcing the fishing laws of the State of Michigan against members of the Bay Mills Indian Community.

6. Due to arrests by the defendant and subsequent prosecutions and pending prosecutions in the State Courts of Michigan, as well as threats of further arrests and prosecutions, and the threat of confiscation of personal property, members of the Bay Mills Indian Community are not able fully to exercise their treaty-protected rights as mentioned in paragraph 4. The inability of members of the Bay Mills Indian Community to exercise their treaty-protected rights has seriously affected the health and economic well-being of their families by sharply reducing the availability of fish from Lake Superior which has been a traditional source of food for subsistence and income.

7. Plaintiff alleges on information and belief that the above-mentioned acts of the defendant in the enforcement of its fishing laws against members of the Bay Mills Indian Community as to their fishing in Lake Superior is the result of defendant's interpretation of the Treaty of July 31, 1855 (11 Stat. 621), as abrogating those rights confirmed by the Treaty of March 28, 1836. Plaintiff further alleges that the defendant, its officers and agents, acting under color of State law, have no jurisdiction to enforce any State statute in such manner as to prevent the Bay Mills Indian Community from exercising its treaty-protected rights.

8. The plaintiff has no adequate remedy at law because:

(a) The damages which have been and will be sustained by the Bay Mills Indian Community, and the members thereof, are not susceptible of monetary determination;

(b) The rights of the Indians to hunt, fish, trap, gather fruits of the land, and to exercise other treaty rights confirmed by treaties with the United States are unique and should be specifically protected; and

(c) In the case of criminal prosecutions pending or threatened by the State or its officers purporting to act under the authority of State statutes, these Indians have no remedy at all except at the risk of suffering fines or imprisonment, involving multiplicity of legal proceedings.

WHEREFORE, the plaintiff prays for judgment as follows:

1. Determining and declaring that the Bay Mills Indian Community has an aboriginal right confirmed by treaty, which may be exercised through its members, to fish in the waters of Lake Superior.

2. Determining and declaring that the State of Michigan does not have the right to control or to regulate fishing by the Bay Mills Indian Community or members thereof within the waters of Lake Superior.

3. Enjoining the defendant, its agents and employees, from enforcing the fishing laws of the State of Michigan against the Bay Mills Indian Community or members thereof while fishing within the waters of Lake Superior.

4. For such other and additional relief as the plaintiff may be entitled to, in accordance with equity and good conscience.

5. For the costs of this action.

Dated: April 9, 1973.